CORNETTE *v.* SEARJEANT METAL PRODUCTS, INC.

[No. 1168A196. Filed May 26, 1970.]

*Alan H. Lobley, Ice, Miller Donadio & Ryan,* of counsel, all of Indianapolis, for appellant.

*James J. Stewart, Stewart, Irwin, Gilliom, Fuller & Meyer,* of counsel, all of Indianapolis, for appellee.

HOFFMAN, P. J.—This appeal arose from the entry of a judgment in favor of defendant-appellee on its motion for a finding in its favor at the close of plaintiff's evidence. Thus, the only evidence before the trial court was that introduced by plaintiff-appellant.

The controversy at issue developed out of the following circumstances:

In 1957, appellant's employer, Harper J. Ransburg Company, Inc., purchased a used punch press which had originally been manufactured by the E. W. Bliss Co. of Brooklyn, New York. Prior to placing the press in operation, the Ransburg Company hired the Cain Safety Service to inspect the unit and

recommend a safe control system for its operation. Cain Safety Service recommended a Searjeant electro-pneumatic two-hand control system, manufactured by appellee. The catalog accompanying the unit described the machine as having an air filter, but at the time of the accident in issue there was no air filter on the machine.

On January 10, 1964, appellant was operating the press. Her work required her to reach into the press to remove metal "blanks." On the occasion in question she reached into the press when the press "ram" was in the "up" position, but for an unexplained reason, the press "double-tripped", the "ram" descended, seriously injuring three of appellant's fingers on her left hand. The fingers were subsequently amputated. Appellant testified that the "ram" had "double-tripped" before, and that she was aware of the possibility and danger of a press double-tripping.

Following the accident, at the request of the Ransburg Company, William A. SerVaas, a consulting engineer, tested the unit several hundred times and inspected it thoroughly. It did not malfunction again.

Appellant's complaint alleged, *inter alia*, essentially, that the unit ". . . contained a defect that made it unreasonably dangerous. . . ."

At the trial of the cause, appellant introduced the testimony of an expert witness to the effect that ". . . a transient situation existed which was caused by dirt in the air system which caused the solenoid valve to function in such a manner as to cause the press to trip a second time."

This situation was precipitated, in the expert's opinion, because there was no air filter.

A second expert testified that, in his opinion, such a unit without an air filter would be substandard.

At the close of plaintiff-appellant's evidence, the court sustained defendant-appellee's motion for a finding in its favor.

Thereafter, the trial court entered extensive findings of fact and conclusions of law.

The trial court entered conclusions of law which, in pertinent part, are as follows:

"The court concludes that the law is with the defendant.

"1.    There is no special liability of the seller of a product for physical harm to the user unless it is established that the product was effective when sold, and that at the time of the accident the product was in substantially the same condition as when sold.

\*    \*    \*    \*    \*

"2.    It is the responsibility of the plaintiff to establish by credible evidence that the alleged defect in the defendant's product proximately caused the injury to the plaintiff. This must be done by something more than surmise or conjecture.

"3.    Finally, the court concludes that plaintiff assumed the risk of her injury as a matter of law. Plaintiff admitted she knew of the danger of double tripping."

Appellant's sole assignment of error is the overruling of her motion for a new trial. She specifies as a basis for her motion for a new trial that the trial court erred in sustaining appellee's motion for a finding.

The basic theory of appellant's argument is that giving every favorable intendment to the facts presented by her at the trial, a prima facie case for holding the manufacturer liable on a theory of strict liability had been established by the evidence.

As appellant concedes on page 23 of her brief, "[t]he question with respect to the law of strict liability has never been squarely presented to an Indiana Court."

In *J. I. Case Co.* v. *Sandefur*, 245 Ind. 213, 197 N. E. 2d 519 (1964), our Supreme Court for the first time accepted, in part, the basic premise that a manufacturer may be liable to third party consumers for negligence in the construction or manufacture of goods, notwithstanding the lack of privity

between these parties. In *Sandefur* the Supreme Court adopted the position, which had gained wide acceptance at the time, espoused in *MacPherson* v. *Buick Motor Co.*, 217 N.Y. 382, 111 N. E. 1050 (1916).

More recently, this court in *Hobson* v. *Beck Welding & Mfg. Inc.*, 144 Ind. App. 199, 245 N. E. 2d 344, 16 Ind. Dec. 717 (1969), (Transfer denied), reversed a lower court decision for failing to properly apply the theory adopted in *Sandefur*.[1]

While the essential doctrine of negligent liability for manufacturer products has been fully accepted in Indiana, there has been no effort, direct or indirect, to adopt the doctrine of "strict liability" by this court, or our Supreme Court.

The essential theory of "strict liability" is embodied in 2 Restatement of Torts, 2d, § 402A, at 347 (1964), which reads as follows:

> "Special Liability of Seller of Product for Physical Harm to User or Consumer
>
> "(1)  One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if
>
> (a)  the seller is engaged in the business of selling such a product, and
>
> (b)  it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.
>
> "(2)  The rule stated in Subsection (1) applies although
>
> (a)  the seller has exercised all possible care in the preparation and sale of his product, and
>
> (b)  the user or consumer has not bought the product from or entered into any contractual relation with the seller."

---

1. For an excellent summary of "products liability" cases, See: Frandsen, *Summary of Indiana Law on Products Liability,* Indiana Products Liability Handbook, published by the Continuing Legal Education Forum (1968).

While the *Sandefur* theory is founded in negligence as a tort action, "strict liability" under § 402A, *supra*, has a different and somewhat unique basis. In *Dagley* v. *Armstrong Rubber Company*, 344 F. 2d 245, at 253, (1965), Chief Judge Hastings, speaking for the United States Court of Appeals, 7th Circuit, spelled out this distinction in theories:

> "As a result of this new policy there has developed a new concept of warranty. * * * The traditional concept of warranty is that the seller of a product expressly and impliedly warrants certain things concerning the product to the buyer. This warranty is a part of the contract between seller and buyer and thus has its basis in contract law. (As noted previously, however, most courts hold that warranty may also state a cause of action in tort.) This traditional concept is not being superseded by the new concept and still requires privity of contract to be enforced.
>
> "*The new concept of warranty bases liability on strict liability in tort. This warranty 'is a very different kind of warranty from those usually found in the sale of goods, and * * * it is not subject to the various contract rules which have grown up to surround such sales.'* " [Quoting 2 Restatement of Torts, 2d, Explanatory Notes § 402A, Comment c, at 349.] (Emphasis supplied.)

Our Supreme Court has accepted such a definition of "warranty", as expressed by Judge Hastings, in *Wright-Bachman, Inc.* v. *Hodnett, et al.*, 235 Ind. 307, at 313, 133 N. E. 2d 713, at 716 (1956), wherein it stated:

> "It is well settled that an action of breach of warranty may be either a contract action or a tort action, depending on the allegations of the complaint."

It should be pointed out, however, that strict liability under § 402A, *supra*, is not the same as liability for breach of the warranty of fitness or merchantability. "Warranty" as used by Judge Hastings and in this opinion is intended in the broad sense of the word and is intended only to identify by analogy the conceptual basis of liability. It should not be confused in this context with the express and implied contract warranties as they may relate to products liability.

It is apparent that negligence, per *Sandefur*, and "strict liability" are distinct and independent bases for a cause of action: the former based on negligent manufacture, inspection, assembly or repair, and the latter on the § 402A, *supra*, protection against any defect rendering a product unreasonably dangerous regardless of fault.

However, the fundamental policy on which both concepts rest is the same: protection of the consumer from physical harm caused by a product. The application of *Sandefur* in Indiana was a response to the problem of the "privity" barrier; and "strict liability" per § 402A, *supra*, was a response to the problem of the "proof" barrier.

We think these principles are sound and we expressly adopt § 402A, *supra*, as the law of this state.[2]

The legal continuum encompassing "strict liability" has proven extremely flexible and adaptable. Beginning with common-law trespass to the person, tort concepts of injury to the person have evolved through stages of negligence, *res ipsa loquitor*, and strict liability for dangerous instrumentalities, *i.e.*, dynamite. The warranty in tort concept of § 402A, however, has proven to be a difficult step to take, in many instances, because it moves so severely away from traditional concepts of "fault" and "negligence."

Comment c under § 402A, *supra*, provides the following rationale for imposition of the doctrine:

"On whatever theory, the justification for the strict liability has been said to be that the seller, by marketing his

2. In *Greeno v. Clark Equipment Co.*, 237 F. Supp. 427 (N.D. 1965), the Northern District Court of Indiana adopted § 402A. Since *Greeno*, an excellent series of cases applying various positions in Indiana to the basic consideration of § 402A have been handed down by the Federal District Courts in Indiana and the 7th Circuit Court of Appeals: *Evans v. General Motors Corporation*, 359 F. 2d 822 (7th Cir., 1966); *Schemel v. General Motors Corporation*, 384 F. 2d 802 (7th Cir., 1967); *Indiana Nat. Bank of Indianapolis v. DeLaval Separator Co.*, 389 F. 2d 674 (7th Cir., 1968); *Eck v. E. I. Dupont DeNemours & Company*, 393 F. 2d 197, (7th Cir., 1968); *Zahora v. Harnischfeger Corporation*, 404 F. 2d 172 (7th Cir., 1968); *Sills v. Massey-Ferguson, Inc.*, 296 F. Supp. 776 (N.D. Ind., 1969).

product for use and consumption, has undertaken and assumed a special responsibility toward any member of the consuming public who may be injured by it; that the public has the right to and does expect, in the case of products which it needs and for which it is forced to rely upon the seller, that reputable sellers will stand behind their goods; that public policy demands that the burden of accidental injuries caused by products intended for consumption be placed upon those who market them, and be treated as a cost of production against which liability insurance can be obtained; and that the consumer of such products is entitled to the maximum of protection at the hands of someone, and the proper persons to afford it are those who market the products."

This rationale has proven to be sound and has been accepted in numerous jurisdictions. The essential question is one of values:   Who deserves protection when an injury occurs, notwithstanding due care in the manufacture of the product— the manufacturer, or the consumer?

In theory at least, as pointed out above in Comment c, if the price of the product accurately reflects the cost of the product, then the consumer is contributing to a fund for his own protection.

Our reading of § 402A, *supra,* and numerous cases applying it, leads us to the conclusion that it should be strictly construed and narrowly applied. The limitations on imposition of the doctrine should be fully invoked, and "strict liability" applied only in those cases which fully and fairly meet the § 402A, *supra,* standards.

The facts critical to this determination are the following: While there was plentiful evidence that at the time of the injury there was no air filter on the machine which, according to the expert, was the proximate cause of the injury, there was no evidence that such air filter was not on the machine at the time it was delivered or sold. In fact, any reasonable inferences would be to the contrary since the catalogue which accompanied the machine called for an

air filter as standard equipment. We are thus confronted with a failure of evidence essential to the imposition of § 402A, *supra*. Section 402A (1) (a) and (b) establishes positive proof requirements for the plaintiff. Specifically, in order to show himself entitled to relief under § 402A (1) (b), *supra*, a plaintiff must carry the burden of proving that no substantial change occurred in the condition of the product in which it was sold. Appellant failed to sustain this burden. As we have noted, the facts are devoid of any evidence of probative value on this issue. Further, the facts of record establish to our satisfaction that removal of the filter, which was prescribed by the manufacturer of the safety control system, could cause the malfunction. In fact, there was no evidence to the contrary. This could not be considered a *defective condition* attributable to the manufacturer.

We would point out that *any* change which increases the likelihood of a malfunction, which is the proximate cause of the harm complained of, and which is independent of the expected and intended use to which the product is put, *is* a *substantial* change. Thus, removal of an air filter which was the proximate cause of the incident complained of was a substantial change.

Appellant further cites as error the trial court's Conclusion of Law No. 3, that appellant had assumed a known risk.

The facts adduced at the trial clearly established that the appellant had seen the machine double-trip on previous occasions.

The doctrine of assumed or incurred risk ". . . is based upon the proposition that one incurs all the ordinary and usual risks of an act upon which he voluntarily enters, so long as those risks are known and understood by him, or could be readily discernible by a reasonable and prudent man under like or similar circumstances." *Stallings et al.* v. *Dick*, 139 Ind. App. 118, at 129, 210 N. E. 2d 82, at 88 (1966), (Transfer denied).

The trial court, in its findings, determined that the appellant knew of the risk, and, further, had adequate safety equipment available to reduce the possibility of harm, which she had failed to use. Conclusion of Law No. 3, that appellant had assumed a known risk, was proper based on the evidence of record. The question remains, however, whether assumed or incurred risk operates as a defense to "strict liability." While there is a split of authority on this issue in those jurisdictions which have adopted § 402A, *supra,* we believe the better position favors its applicability. See:

*Greeno* v. *Clark Equipment Co.,* 237 F. Supp. 427 (N. D. 1965); 2 Restatement of Torts, 2d, § 402A, Comment n at 356 (1964).

The trial court properly ruled in favor of the defendant at the close of plaintiff's evidence and, accordingly, the judgment entered for defendant-appellee was proper and must be affirmed.

Judgment affirmed.

White, J., concurs with opinion.

Sharp, J., concurs with opinion in which Pfaff, J., concurs.

### CONCURRING OPINION

SHARP, J.—I agree that the principles of liability in Section 402A of the Restatement of Torts (1964) should be adopted as a part of the common law in Indiana. Since this is a threshold case in this regard we should be careful to adopt this doctrine in a proper manner and to avoid embellishing it with extraneous statements. I believe that Presiding Justice Hoffman's opinion contains language which will result in confusion to the bench and bar in Indiana in strict liability cases.

I am in particular disagreement with the following statement in Presiding Judge Hoffman's opinion:

"Our reading of § 402A, *supra,* and numerous cases applying it, leads us to the conclusion that it should be strictly construed and narrowly applied. The limitations on

imposition of the doctrine should be fully invoked, and 'strict liability' applied only in those cases which fully and fairly meet the § 402A, *supra,* standards."

I have carefully read all of the citations of authority and cannot find one that suggests or justifies the above quoted statement. I do not believe that products liability cases based on strict tort liability should be "strictly construed and narrowly applied" any more than products liability cases based on negligence, express warranty, or implied warranty. If a party is able to bring his case within the principles set forth within § 402A, then he is entitled to its benefits, no more, no less. To attach the rider "strictly construed and narrowly applied" upon the adoption of § 402A is to graft a condition upon such adoption that has not been present in the adoption of § 402A in any other jurisdiction to my knowledge. This will lead to undue confusion in the handling of strict tort liability cases in Indiana. Such condition is wholly unnecessary and undesirable in my view. In *Greeno* v. *Clark Equipment Co.,* 237 F. Supp. 427, (ND Ind. 1965), Judge Eschbach stated at page 428:

> "While strict liability in certain forms is not a stranger to the law of Indiana, notably in workmen's compensation and as ultra hazardous activity following *Rylands* v. *Fletcher,* 3 H.C. 774 (1865) ; L.R. 1 Ex. 265 (1866) ; L.R. Sh.L. 330 (1868), it is of recent vintage in the area of products liability. This opinion will consider the theory of strict liability only in the context of products liability. When so confined, its least ambiguous definition appears in Restatement (Second), Torts § 402A (Approved May 1964), set out as follows:
>
> '§ 402A. Special Liability of Seller of Product for Physical Harm to User or Consumer.
>
> '(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property, is subject to liability for physical harm thereby caused to the ultimate user or consumer or to his property, if
>
> '(a) the seller is engaged in the business of selling such a product, and

'(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

'(2) The rule stated in Subsection (1) applies although

'(a) the seller has exercised all possible care in the preparation and sale of his product, and

'(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.'

Without attempting an exhaustive explanation, it may fairly be said that the liability which this section would impose is hardly more than what exists under implied warranty when stripped of the contract doctrines of privity, disclaimer, requirements of notice of defect, and limitation through inconsistencies with express warranties. *Greenman* v. *Yuba Power Prods., Inc.*, 59 Cal. 2d 67, 27 Cal. Rptr. 697, 377 P. 2d 897 (1963); *Putman* v. *Erie City Manufacturing Co.*, 338 F. 2d 911 (5th Cir., November 30, 1964), approving of Judge Traynor's concurring opinion in *Escola* v. *Coca-Cola Bottling Co.*, 24 Cal. 2d 453, 150 P. 2d 436 (1944); Restatement, *supra*, comment at 349. The conditions of liability which may not be self-evident in the above text are a 'defective condition' at the time the product leaves the seller's control and which causes harm to a user or consumer. A 'defective condition' is a condition not contemplated by the consumer/user and which is 'unreasonably dangerous' to him or his property, that is, more dangerous than would be contemplated by the ordinary consumer/user with the ordinary knowledge of the community as to its characteristics and uses. Restatement, *supra*, comment at 351-52. An axe is not unreasonably dangerous because, as in negligence law, users would contemplate the obvious dangers involved. But a farm combine with a weak lid over the auger would constitute an unreasonable danger because such a danger is beyond the contemplation of ordinary users. The same basis applies in Indiana negligence law for the determination of whether a latent defect exists. *J. I. Case Co.* v. *Sandefur*, 197 N. E. 2d 519 (Ind. 1964). The difference between strict liability and the law of Sandefur is that in the former the care or lack of care of the manufacturer in causing a defect is irrelevant. But the plaintiff-user's conduct is very much in question under the doctrine of strict liability. Recovery in strict liability is not conditioned on privity of contract, or reliance or notice to the seller of a defect, and the seller cannot

disclaim or by contract alter a duty which the law would impose upon him. Nor can inconsistent express warranties dilute the seller's duty to refrain from injecting into the stream of commerce goods in a 'defective condition.' *Greenman* v. *Yuba Power Prods., Inc., supra; Henningsen* v. *Bloomfield Motors, Inc.,* 32 M/K/ 358. 161 A/ 2d 69. 85 A.L.R. 2d 1 (1960) ; Restatement, *supra,* comment at 355-56. Neither would contributory negligence constitute a defense, although use different from or more strenuous than that contemplated to be safe by ordinary users/consumers, that is, 'misuse,' would either refute a defective condition or causation. 'Misuse' would include much conduct otherwise labeled contributory negligence and would constitute a defense. Incurring a known and appreciated risk is likewise a defense. Restatement, *supra,* comment at 356.

See also, *Sills* v. *Massey Ferguson,* 296 F. Supp. 776 (ND Ind. 1969), where the same judge added a further dimension announced in *Greeno* as follows:

"The first ground urged for dismissal raises the question of the scope of a manufacturer's duty-does a manufacturer owe a duty to a mere bystander who is not a 'user' or 'consumer'? Under Indiana law, this is a question to be decided by the court. Cf. *Northern Indiana Power Co.* v. *West,* 218 Ind. 321, 32 N. E. 2d 713 (1941) ; *Schemel* v. *General Motors Corp.,* 384 F. 2d 802 (7th Cir. 1967). The Restatement on its face applies only to a 'user or consumer.' Restatement (Second) of Torts § 402A (1965). While this language has a broad meaning, Restatement (Second) of Torts, Explanatory Notes § 402A, comment 1 at 354 (1965) ; cf. *Delaney* v. *Towmotor Corp.,* 339 F. 2d 4 (2d Cir. 1964), the Restatement expressly warns that it takes no position on bystander recovery. Restatement (Second) of Torts, Explanatory Notes § 402A, comment o at 356 (1965).

There are at least four jurisdictions which, with varying degrees of forth-rightness, have permitted a bystander to recover from a manufacturer. In *Piercefield* v. *Remington Arms Co.,* 375 Mich. 85, 133 N. W. 2d 129 (1965), the plaintiff was injured when the barrel of a shotgun fired by his brother exploded, allegedly as the result of a defective shotgun shell manufactured by the defendant. In reversing the trial court's dismissal of plaintiff's implied warranty count, the Michigan Supreme Court noted that privity was no longer a requirement in Michigan and, in

many cases, it would be unjust and totally unrealistic to distinguish between the user and a bystander by saying that one could recover but the other could not. A Connecticut court followed Michigan's lead in *Mitchell* v. *Miller*, 26 Conn. Sup. 142, 214 A. 2d 694 (Super. Ct. 1965). In *Mitchell*, a defective transmission, although the gear shift was placed in 'park,' permitted a parked car to roll down a slope and kill plaintiff's decedent as he was playing golf. The court, applying strict liability under Section 402A, refused to dismiss the complaint against the manufacture of the automobile and suggested that foreseeability and reasonable anticipation of injury from a defect were the proper tests. It was recognized that the likelihood of injury from the use of a defective automobile existed not only for the driver or passenger, but for pedestrians as well. 'The public policy which protects the user and consumer should also protect the innocent bystander.' Id. at 150, 214 A. 2d at 699.

In another case, an ironworker was standing on a jobsite when steel roof joists which had been installed overhead collapsed, allegedly as the result of a defect. Although the court at one point calls the plaintiff a 'plaintiff-user,' clearly he was not a user, at least not as that term is used in the Restatement. In refusing to dismiss what the court characterized as a tort action for breach of an implied warranty against the manufacturer of the joists, the court stated that plaintiff was one whose presence the defendant could reasonably anticipate. *Lonzrick* v. *Republic Steel Corp.*, 6 Ohio St. 2d 227, 218 N. E. 2d 185 (1966). And in *Speed Fasteners, Inc.* v. *Newsom*, 382 F. 2d 395 (10th Cir. 1967), decided under Oklahoma law, plaintiff's fellow employee was using a ramset to drive studs manufactured by the defendant. A stud broke and struck plaintiff who was permitted to maintain an action for breach of implied warranty. The court found that the absence of privity was no bar to recovery where the implied warranty was imposed by law on the basis of public policy. The injured employee was deemed to stand in the shoes of the employer who had bought the studs from defendant because a manufacturer knows that businesses are carried on by employees who actually use the products furnished by their employers.

Other decisions, although not applicable factually to bystanders, have suggested that the standard for a manufacturer's duty is the foreseeability that the plaintiff will be affected by the product at least if defectively designed or manufactured. A buyer's injured wife was permitted to recover for personal injuries for breach of an implied war-

ranty because, within the reasonable contemplation of the parties, she might be expected to become a user of her husband's automobile. *Henningsen* v. *Bloomfield Motors, Inc.*, 32 N.J. 358, 161 A. 2d 69, 75 A.L.R. 2d 1 (1960). An airline passenger may recover against the manufacturer because his use of the product is within the reasonable contemplation of the manufacturer. *Goldberg* v. *Kollsman Instrument Corp.*, 12 N.Y. 2d 432, 240 N.Y.S. 2d 592, 191 N. E. 2d 81 (1963). A guest passenger may sue the manufacturer of a defective automobile tire in strict liability because such a person is foreseeably within the area of risk. *Hacker* v. *Rector*, 250 F. Supp. 300 (W.D. Mo. 1966) (Missouri law). The manufacturer of a street light fixture was liable to a telephone lineman who received an electric shock when he touched the fixture. The lineman could sue in implied warranty because his presence could be anticipated. *Pimm* v. *Graybar Elec. Co.*, 27 A.D. 2d 309, 278 N.Y.S. 2d 913 (4th Dept. 1967). A child who was helping his father on the farm could recover in implied warranty from the manufacturer of a tractor which had a defective power-take-off shaft because the presence of farm children while the tractor was being used should have been reasonably anticipated by the defendant. *Bengford* v. *Carlem Corp.*, Iowa 156 N.W. 2d 855 (1968). Also see *Resenau* v. *City of New Brunswick*, 51 N.J. 130, 238 A. 2d 169 (1967) ; *Meche* v. *Farmers Drier & Storage Co.*, 193 So. 2d 807 (La. App. 1967) ; 2 L. Frumer & M. Friedman, Products Liability § 16.04 [2] [c] (1966). Thus, a substantial body of authority indicates that a seller or manufacturer owes a duty to those who, according to reasonable foreseeability, will be affected by his product if defectively made or designed.

An alternative theory has been proposed to support bystander recovery. Strict liability, it is argued, should extend to all persons regardless of the foreseeability of an effect on them by the defective product. Foreseeability, of course, is a negligence concept. In a negligence action, liability is imposed for those consequences which by reason of their foreseeability make the actor's conduct unreasonable. In strict liability, however, the actor's conduct is irrelevent, and it is contended that foreseeability should also be. That is, the exercise of even the highest degree of care is not a defense. The proponents of this approach contend the true policy for strict liability is that the manufacturer is better able to bear the loss than is the injured person. Since bystanders as a class would not generally be better able to bear the loss than users or consumers, it is contended the

policy for strict liability should also extend to bystanders. Note, Strict Liability and the Bystander, 64 Colum. L. Rev. 916 (1964). Language from one of the leading cases gives support to this 'any person' theory: '[a] manufacturer is strictly liable in tort when an article he places on the market, knowing that it is to be used without inspection for defects, proves to have a defect that causes injury to a human being.' *Greenman* v. *Yuba Power Prod., Inc.,* 59 Cal. 2d 57, 62, 27 Cal. Rptr. 697, 700, 377 P. 2d 897, 900, 13 A.L.R. 3d 1049 (1963) (dictum), (emphasis added).

The court, however, need not choose between these theories because under either defendant in this case owed a duty to the plaintiff. Plaintiff is within the 'any person' test. As to the foreseeability test, this court holds that a person standing approximately 150 feet from a lawn mower utilizing rotary blades is foreseeably within the zone of danger that exists if the product is defective in design or manufacture.

To hold otherwise would be to exalt form over substance. There is nothing inherent in the status of bystander that requires the denial of the right to sue the manufacturer in strict liability. Restatement (Second) of Torts, Explanatory Notes § 402A, comment o at 356 (1965). It would be unjust to deny plaintiff a recovery because of the purely fortuitous circumstance that he was standing by rather than using. The zone of liability is commensurate with the zone of foreseeable risk. As the Michigan Supreme Court said:

'[t]ake the recent case of *Henningsen* v. *Bloomfield Motors, Inc.,* 32 N.J. 358, 161 A. 2d 69, 75 A.L.R. 2d 1, as an example of reason for the rule. Would anyone, having read the court's exhaustive opinion, expect a result reasoned differently had, say, the plaintiff been a pedestrian, who, when the Henningsen car 'verred sharply to the right and crashed into a highway sign and a brick wall,' suffered crushed legs as the car struck the wall? Take *Spence* [*Spence* v. *Three Rivers Builders & Masonry Supply,* 353 Mich. 120, 90 N.W. 2d 873 (1958)] as another example, and assume that the plaintiff there had been a bystander or visitor injured by a crumbling and buckling of some wall of the cottage. Would our result have been different?' *Piercefield* v. *Remington Arms Co.,* 375 Mich. 85, 99, 133 N.W. 2d 129, 135 (1965).

Defendant's second ground for dismissal is without merit. Whether the alleged injury was caused by the use of the mower or by a defect is a question of proximate cause to be decided by the trier of facts. The court cannot say as a

matter of law that the alleged defects did not cause plaintiff's alleged injuries. See *Elder* v. *Fisher,* 247 Ind. 598, 217 N. E. 2d 847 (1966); *Phares* v. *Carr,* 122 Ind. App. 597, 106 N. E. 2d 242 (1952). The allegations of the complaint are to be considered true for purposes of deciding the questions raised by a motion to dismiss. *United States* v. *New Wrinkle, Inc.,* 342 U.S. 371, 72 S. Ct. 350, 96 L. Ed. 417 (1952).

The third ground advanced for dismissal is that plaintiff incurred the risk of injury. As was the case in Count II (negligence), this is a question for the jury. See *Stallings* v. *Dick,* Ind. App., 210 N. E. 2d 82 (1965); *Thompson* v. *Pickle,* 136 Ind. App. 139, 191 N. E. 2d 53 (1963); *Maiorino* v. *Weco Prod. Co.,* 45 N.J. 570, 214 A. 2d 18 (1965); L. Frumer & M. Friedman, Products Liability, § 16A[5] [f] (1966); cf. *Greeno* v. *Clark Equip. Co.,* 237 F. Supp. 427 (N.D. Ind. 1965); Restatement (Second) of Torts, Explanatory Notes § 402A, comment n at 356 (1965)."

Both *Greeno* and *Sells* are excellent comprehensive and well-written opinions which are thoroughly relevant to this case. I would expressly adopt both of them as the law of Indiana.

I am in partial disagreement with the following statement of Judge Hoffman's opinion:

"We are thus confronted with a failure of evidence essential to the imposition of § 402A. Section 402A(I) (a) and (b) establishes positive proof requirements for the plaintiff. Specifically, in order to show himself entitled to relief under § 402A (I) (b), a plaintiff must carry the burden of proving that no substantial change occurred in the condition of the product in which it was sold."

Comment g under § 402A of Restatement of Torts (1964) states:

"Defective condition. The rule stated in this Section applies only where the product is, at the time it leaves the seller's hands, in a condition not contemplated by the ultimate consumer, which will be unreasonably dangerous to him. The seller is not liable when he delivers the product in a safe condition, and subsequent mishandling or other causes make it harmful by the time it is consumed. The burden of proof that the product was in a defective condition at the time that it left the hands of the particular seller

is upon the injured plaintiff; and unless evidence can be produced which will support the conclusion that it was then defective, the burden is not sustained.

Safe condition at the time of delivery by the seller will, however, include proper packaging, necessary sterilization, and other precautions required to permit the product to remain safe for a normal length of time when handled in a normal manner."

I believe that comment g is an accurate statement of the plaintiff's burden of proving a strict tort liability case. Presiding Justice Hoffman's conclusion that "a plaintiff must carry the burden of proving that no substantial change occurred in the condition of the product in which it was sold" adds to the plaintiff's burden an element which I fail to discern in an examination of the language of § 402A itself, the comments thereon, and the cases cited in the majority opinion.

Again, I think we are adopting § 402A with an unnecessary condition attached to it.

Comment p of § 402A of the Restatement of Torts (1964) states:

"Further processing or substantial change. Thus far the decisions applying the rule stated have not gone beyond products which are sold in the condition, or in substantially the same condition, in which they are expected to reach the hands of the ultimate user or consumer. In the absence of decisions providing a clue to the rules which are likely to develop, the Institute has refrained from taking any position as to the possible liability of the seller where the product is expected to, and does, undergo further processing or other substantial change after it leaves his hands and before it reaches those of the ultimate user or consumer.

It seems reasonably clear that the mere fact that the product is to undergo processing, or other substantial change, will not in all cases relieve the seller of liability under the rule stated in this Section. If, for example, raw coffee beans are sold to a buyer who roasts and packs them for sale to the ultimate consumer, it cannot be supposed that the seller will be relieved of all liability when the raw beans are contaminated with arsenic, or some other poison. Likewise the seller of an automobile with a defective steering gear which breaks and injures the driver, can scarcely

expect to be relieved of the responsibility by reason of the fact that the car is sold to a dealer who is expected to 'service' it, adjust the brakes, mount and inflate the tires, and the like, before it is ready for use. On the other hand, the manufacturer of pigiron, which is capable of a wide variety of uses, is not so likely to be held to strict liability when it turns out to be unsuitable for the child's tricycle into which it is finally made by a remote buyer. The question is essentially one of whether the responsibility for discovery and prevention of the dangerous defect is shifted to the intermediate party who is to make the changes. No doubt there will be some situations, and some defects, as to which the responsibility will be shifted, and others in which it will not. The existing decisions as yet throw no light upon the questions, and the Institute therefore expresses neither approval nor disapproval of the seller's strict liability in such a case."

I believe that a recent article in 50 Minn. L. Rev. 791, 840 (1966), by Dean William L. Prosser helps put the proof problems in strict tort liability cases in proper perspective:

"Strict liability eliminates both privity and negligence; but it still does not prove the plaintiff's case. He still has the burden of establishing that the particular defendant has sold a product which he should not have sold, and that it has caused his injury. This means that he must prove, first of all, not only that he has been injured, but that he has been injured by the product. The mere possibility that this may have occurred is not enough, and there must be evidence from which the jury may reasonably conclude that it is more probable than not. Thus it is not enough to show that the plaintiff became ill after eating the defendant's tinned salmon, where there is no proof of what else he ate, and others who ate the salmon were not made ill.

The plaintiff must prove also that he was injured because the product was defective, or otherwise unsafe for his use. The fact that a plane has crashed does not establish that it was defective, until the possibility of negligent flying has been eliminated. An oxygen tank is not shown to be defective merely because an explosion has occurred in a regulator which the plaintiff has attached to it; and an unusual method of opening a bottle may prevent any conclusion that there was anything wrong with it. And the bare fact that the plaintiff became ill after exposure to the defendant's insecticide does not prove that it was unreasonably dangerous

to human beings. On both of these issues, however, expert opinion may be sufficient to sustain the plaintiff's case.

Further, the plaintiff must prove that the defect was in the product when it was sold by the particular defendant. When on the evidence it is equally likely that it developed after the product left his hands, as where food has been opened and exposed for a considerable time by the dealer, no liability is established on the part of any previous seller.

When the plaintiff has proved this much, all trial lawyers know that he usually recovers in a negligence action against the manufacturer. There have been occasional cases in which the defect has been such that res ipsa loquitur has not been applied to aid the plaintiff in his proof of negligence, and there have been a few in which the defendant's evidence of his own due care has been held to be so conclusive as to entitle him to a directed verdict, and fewer still in which the jury has found that there is no negligence. These cases are obviously to be changed. But by and large, when the proof reaches this point, the jury is permitted to, and does, find for the plaintiff. The alarm of the manufacturers over the prospect of a great increase in liability under the new rule is not in reality justified. As to the dealer, against whom there is frequently no proof of negligence at all, it will certainly result in some occasional increase.

The difficult questions, as to the last two stages of proof, are those of circumstantial evidence and inferences from the facts. There is no indication that these are to be dealt with in any different manner from the negligence cases. Res ipsa loquitur, strictly speaking, is not an applicable principle when there is no question of inferring any negligence; but the inferences from circumstantial evidence which are the core of the doctrine are no less applicable to the strict liability.

The bare fact that an accident happens to a product, that an automobile goes into the ditch, is usually not sufficient proof that it was in any way defective. Even the fact that it is found afterward to be in a condition that could have been the cause is not enough, if it is no less likely that the condition was brought about by the accident itself. On the other hand, the addition of very little more in the way of other facts, as for example that a new car veered suddenly and sharply from the road without the fault of the driver, that the defect had given trouble before the accident, that other similar products made by the defendant had met with similar misfortunes, or the elimination of other cause, or

the aid of expert opinion, may be enough to support the inference. In addition, there are some accidents, as where a beverage bottle explodes or even breaks while it is being handled normally, as to which there is human experience that they do not ordinarily occur without a defect. As in the cases of res ipsa loquitur, the experience will give rise to the inference and it may be sufficient to sustain the plaintiff's burden of proof.

Tracing the defect in the product into the hands of the defendant confronts the plaintiff with greater difficulties. There is first of all the question of lapse of time and long continued use. This in itself is not enough, even when it has extended over a good many years, to defeat the recovery where there is satisfactory proof of an original defect; but when there is no definite evidence, and it is only a matter of inference from the fact that something broke or gave way, the continued use usually prevents the inference that the thing was more probably than not defective when it was sold. It has been said a good many times that the seller does not undertake to provide a product that will not wear out. There are other cases in which long use has been given weight, along with other evidence, in the conclusion that no original defect was shown. In a few cases a distinction has been made as to stationary parts, which are not so likely to fail with wear, and an original defect has been found.

Once past the hurdle of use, the plaintiff must eliminate his own improper conduct as an equally probable cause of his injury. When he has done this, and has accounted for any intermediate handling, he has of course made out a sufficient case of strict liability for the defect against the dealer who has last sold the product. The very presence of the latter in the picture, however, means that he must be eliminated before the manufacturer can be held. When on the evidence it appears equally likely that the defect has developed in the hands of the dealer, the plaintiff has not made out his case against anyone else. This has meant, in a good many cases, that when a beverge bottle explodes or breaks the case against the manufacturer is not established until the handling by intermediate parties has been accounted for. There need not be conclusive proof, and only enough is required to permit a finding as to the greater probability. Since the plaintiff nearly always finds it difficult to obtain evidence as to what has happened to the bottle along the way, the courts have been quite lenient in finding the evidence sufficient. He is not required to do the impossible by accounting for every moment of the bottle's

existence since it left the bottling plant; and it is enough that he produces sufficient evidence of careful handling in general, and of the absence of unusual incidents, to permit reasonable men to draw the conclusion."

The plaintiff has the burden of proving the product was sold in a defective condition, and that such defect was the proximate cause of the injury complained of. The defenses of assumption of risk, misuse, and change in the product not reasonably foreseeable to the manufacturer are available to the defendant who carries the burden of proof in such. The plaintiff might reasonably seek to show the product was sold in a defective condition by proving the defect which caused the injury and a history of the product showing that it had not been changed since delivered from the hands of the defendant. However, this is not the only avenue of proof open to the plaintiff and he is under no obligation to follow such. Any change in the product which would be of such nature not reasonably foreseeable to the manufacturer and which contributes to the defect which causes injury is a substantial change and would constitute an affirmative defense to the action. Misuse, either in using the product for a purpose not reasonably foreseeable to the manufacturer or in using the product in a manner not reasonably foreseeable for a reasonably foreseeable purpose, and assumption of risk, constitute the other defenses which the defendant may contend, and upon which the defendant has the burden of proof.

With these thoughts, I concur in the result reached in the opinion of Presiding Justice Hoffman.

Pfaff, J., concurs.

## CONCURRING OPINION

WHITE, J.—Judge Hoffman's opinion demonstrates, and Judges Sharp and Hoffman agree, that appellant has not made a *prima facie* case on the theory of strict liability as stated in 2 RESTATEMENT OF TORTS, 2d § 402A, at 347 (1964). I also agree. Appellant does not contend (nor do I

believe that she could plausibly contend) that she made a *prima facie* case under any other theory of liability. Therefore, the trial court's direction of a defendant's verdict must be approved regardless of whether, or to what extent, the Restatement is a statement of the common law of Indiana. I see no reason for us to speculate herein on those questions. Our answers should come in a case in which they will be decisive.

I concur in affirming the judgment below for the sole reason that the appellant did not make a *prima facie* case under any theory of liability.

NOTE.—Reported in 258 N. E. 2d 652.