William F. HASEMAN, Appellant–Defendant,

v.

Paul E. ORMAN, Patricia Orman, Keith Jones, Paula Jones, and James G. Orman, Appellees–Plaintiffs.

No. 11A01–9411–CV–357.

Court of Appeals of Indiana.

Jan. 22, 1996.

Rehearing Denied April 26, 1996.

---

Don M. Robertson, Margaret Frisbie, Bunger & Robertson, Bloomington, for Appellant.

Max E. Goodwin, Mann, Chaney, Johnson, Goodwin & Williams, Terre Haute, for Appellees.

## OPINION

BAKER, Judge.

Appellant-defendant William F. Haseman appeals the trial court's judgment in favor of appellees-plaintiffs Paul E. Orman, Patricia Orman, Keith Jones, Paula Jones, and James G. Orman (collectively Ormans). Specifically, Haseman argues the trial court erred in finding him, as the owner and lessor of mineral rights, strictly liable for damages caused by the lessee of those rights to surface property owned by the Ormans.

### FACTS

Haseman and the Andrew Humphreys Inter-vivos Trust[1] are the owners of a vein of coal underlying 246.70 acres in Greene County, Indiana. The Ormans are the owners of surface rights to approximately 6.5 acres of the land over the coal vein, on which they have built three houses. Through a series of leases, Haseman[2] leased his rights to the coal to Fuel, Inc., a leasing corporation for Coal, Inc.[3] In return, Haseman was to receive royalties from any coal mined.

The leases between Haseman and Fuel, Inc. provided in part that Fuel, Inc. had the authority to remove all of Haseman's coal by subterranean methods. The leases required Fuel, Inc. to keep records of all coal mined, removed and sold, and gave Haseman the right to inspect these records. The leases also required Fuel, Inc. to conduct its mining operations in compliance with the regulations and laws of Indiana and the United States. Additionally, Fuel, Inc. was required to carry insurance for workers' compensation, bodily injury, and property damage, and to defend and hold Haseman harmless for any claims arising out of mining operations conducted under the lease.

Before mining, Coal, Inc. sought the necessary permits, which did not allow for mining of the land under the Ormans' homes. Pursuant to its permit and the Indiana Surface Mining Control and Reclamation Act,[4] Coal, Inc. was required to mine within its permit and to maintain a 50-foot barrier from all surface structures. During 1985, however, Coal, Inc. began mining beyond its permit and extended its operations to include the coal beneath the Ormans' land. In 1987, the Ormans began to notice structural problems with their homes and depressions in their real estate. Thereafter, the Ormans filed suit against Haseman and Coal, Inc. After a bench trial, the trial court entered findings of fact and conclusions of law. Specifically, the trial court found that the Ormans' structural problems were caused by underground mine subsidence resulting from the removal of coal

---

1. The Trust was not named as a defendant in the lawsuit.

2. For purposes of this appeal, we will refer to Haseman individually.

3. Coal, Inc. was named as a defendant in the Ormans' lawsuit, but is not a party to this appeal. Further, the relationship between Fuel, Inc. and Coal, Inc. is unclear. The record only reveals that Fuel, Inc. entered into the lease agreement with Haseman and the Coal, Inc. received the mining permit and performed the actual mining of the coal.

4. IND. CODE §§ 13–4.1–1–1 to 13–4.1–15–14, repealed by P.L. 1–1995, SEC. 91.

from beneath their homes. Further, the trial court found that Haseman and Coal, Inc. had breached their absolute duty to provide surface owners with subjacent support. Accordingly, the trial court awarded the Ormans $40,610.00 in damages. The trial court denied the Ormans' request for punitive damages, but did find Coal, Inc. liable for costs and attorney fees in the amount of $27,325.14.

### DISCUSSION AND DECISION

Haseman presents one issue for review: whether the trial court erred in finding him strictly liable for the damage caused to the Ormans' surface property.[5] Specifically, Haseman argues that as a passive lessor, he should not be held liable for the mining errors made by Coal, Inc.

Initially, we note our standard of review. When the trial court enters findings of fact and conclusions of law pursuant to a party's request under Ind.Trial Rule 52(A), our standard of review is limited. We first determine whether the evidence presented supports the findings and then whether the findings support the judgment. *Vanderburgh County Bd. of Commissioners v. Rittenhouse* (1991), Ind.App., 575 N.E.2d 663, 665, *trans. denied.* We will reverse the judgment only if it is clearly erroneous, meaning unsupported by the factual findings and the conclusions based on those findings. *Id.* Findings of fact are clearly erroneous when the record lacks any facts or reasonable inferences to support them. *Id.* When determining whether the findings or judgment are clearly erroneous, we consider only the evidence most favorable to the judgment and the reasonable inferences flowing from that evidence. *Id.* As always, we refuse to reweigh the evidence or reassess witness credibility. *Id.* at 666.

In the instant case, Haseman does not challenge the trial court's findings of fact. Rather, he argues that the trial court's finding that he was the owner and lessor of mineral rights is not sufficient to support its

conclusion that he was strictly liable as a matter of law.

The trial court concluded that an absolute duty exists on the part of the owners of mineral rights to provide subjacent support for the owners of surface rights. Record at 232–33. In support of this conclusion, the trial court cited *Paull v. Island Coal Co.* (1909), 44 Ind.App. 218, 88 N.E. 959. *Paull,* however, does not support the imposition of strict liability on mineral rights owners who leased the right to mine the minerals to another party, and who merely passively participated in mining operations. In *Paull,* the court found that surface owners have an absolute right to have sufficient natural or artificial support to sustain the surface of their land, and that:

> if the owner of the mines removes them entirely, so that injury results from a subsidence of the soil, he will be liable for resulting damages, no matter how carefully or skillfully he has conducted his mining operations.... This right of subjacent support is absolute. It is independent of the question of negligence.

*Id.* at 222, 88 N.E. at 960. We believe the proper interpretation of *Paull* is one that is consistent with the Restatement Second of Torts § 820, which provides:

> (1) One who withdraws the naturally necessary subjacent support of land in another's possession or the support that has been substituted for the natural necessary support is subject to liability for a subsidence of the land of the other that was naturally dependent upon the support withdrawn.

Comment (g) to the Restatement clarifies who is to be liable under the section:

> The person liable under the rule stated in this Subsection is the actor who withdraws the naturally necessary support. It is immaterial whether, in respect to the supporting land, the actor is owner, possessor, licensee or trespasser. The owner or possessor of this land is not liable under the

---

**5.** In his appellate brief, Haseman also argues that the trial court erred in holding him liable for costs and attorney fees. However, the Ormans concede that the trial court did not in fact find

Haseman liable for attorney fees and costs. Rather, the trial court assessed this amount solely against Coal, Inc. Thus, we need not consider this issue.

rule stated in this Section unless he was an actor in the withdrawal of support. Restatement 2d of Torts, § 820. Thus, we refuse to impose strict liability on mineral owners who do not participate in the removal of the minerals, and we hold that the trial court erroneously determined that Haseman was strictly liable to the Ormans for the damage to their land.

Our decision that strict liability is inapplicable in this situation is based upon the nature of strict liability. In torts, the loss is placed on the party whose conduct caused the harm. *See* Dan B. Dobbs, Robert E. Keeton & David G. Owen, *Prosser & Keaton on Torts* § 2 (5th Ed.1984) (the tortfeasor usually is held liable for acting with an intention that the law treats as unjustified, or acting in a way that departs from a reasonable standard of care). Thus, a tortfeasor is liable for damage caused by his acts because he is in the best position to control his acts and prevent damage from occurring. In strict liability, however, liability is imposed on an actor regardless of his intent to interfere with a legally protected interest without a legal justification for doing so or a breach of the actor's duty to exercise reasonable care. *Prosser & Keeton,* § 75. Thus, a particular group of persons can be held liable regardless of their fault or participation in the harm. *Cornette v. Searjeant Metal Products, Inc.* (1970), 147 Ind.App. 46, 52, 258 N.E.2d 652, 656. The primary reason for such an imposition in the absence of fault is the fact that the party is in the best position to bear the loss. *Id.* at 52–53, 258 N.E.2d 652.

In the present case, Haseman, the lessor mineral owner, was not in the best position to bear the loss caused by Coal, Inc., the lessee mining company, who was required to maintain workers' compensation, as well as liability and property damage insurance. In addition, Haseman had no control or authority over the mining operations such that he could have guarded against loss. As such, it would be unjust to impose liability on Haseman merely because he owned the vein from which the coal was mined, without proof that Haseman was responsible for, or even involved in, the damage to the Ormans' land. Thus, we refuse to uphold the trial court's decision that Haseman was strictly liable for the Ormans' damages.

Although we have determined that strict liability is inapplicable to this situation, we still must consider whether the trial court erred, under negligence principles, in finding that Haseman had breached a duty to the Ormans to provide subjacent support for their land.[6] The trial court did not make specific findings regarding Haseman's involvement in the mining operations. Thus, we must construe the evidence in the record most favorably to the Ormans and determine whether Haseman voluntarily assumed a duty to the Ormans.

Generally, whether a duty exists is a question of law for the court, although questions of fact may be interwoven with this determination. *Douglass v. Irvin* (1990), Ind., 549 N.E.2d 368, 369 n. 1. When addressing the duty issue, we must consider the nature of the relationship between the parties and whether the party being charged with negligence had knowledge of the situation or circumstances surrounding the relationship. *T.S.B. by Dant v. Clinard* (1990), Ind.App., 553 N.E.2d 1253, 1255. A duty may also be created by gratuitous or voluntary assumption, which creates a special relationship between the parties and a corresponding duty to act in the manner of a reasonably prudent person. *Robinson v. Kinnick* (1989), Ind.App., 548 N.E.2d 1167, 1168, *trans. denied.*

As we stated above, the evidence most favorable to the Ormans reveals that the lease between Haseman and Fuel, Inc. gave Fuel, Inc. the exclusive right to remove all of Haseman's interest in the coal, and to determine the quantity and quality of the coal removed. Although Haseman was to receive royalties from all coal mined and had the authority to inspect Fuel, Inc.'s books regarding the amount and price of all coal

---

6. Although normal procedure would require us to remand this case to the trial court to enter findings on negligence, in the interests of judicial economy we will address the issue of Haseman's duty to the Ormans here.

mined, Haseman did not have any control or authority over Fuel, Inc.'s operations or any authority to inspect or interfere with other Fuel, Inc. records. The lease required Fuel, Inc. to conduct its mining operations in accordance with state and federal laws, and to maintain insurance for workers' compensation, bodily injury and property damage.[7] Haseman himself testified that he visited the mine infrequently, and that he had no background or education that would enable him to comprehend the mining operations. On the basis of this uncontroverted evidence, we find that Haseman was only a passive lessor to Fuel Inc., and, as a result, did not assume a duty to the Ormans. Thus, Haseman is not liable to the Ormans for damage caused by Coal Inc.'s operations.

Judgment reversed and remanded for proceedings not inconsistent with this opinion.

ROBERTSON, J., concurs:

GARRARD, J., dissents with separate opinion.

GARRARD, Judge, dissenting.

I respectfully dissent and would affirm the judgment of the trial court.

Nearly ninety years ago we determined in *Paull v. Island Coal Co.* (1909), 44 Ind.App. 218, 88 N.E. 959 that surface owners have an absolute right to subjacent support from those who own minerals located beneath the surface.

I disagree with the majority's determination that *Paull* should not apply to the facts before us and its determination that "Haseman, the lessor mineral owner, was not in the best position to bear the loss. . . ."

Haseman owned the rights to the coal vein and to the means for its extraction. It matters little that he in turn leased the actual extraction to Coal, Inc. Haseman could de-

termine who would perform the extraction, under what terms and conditions and under what terms for indemnification should a duty to the surface owners be breached.

In my view since he possessed the rights to the coal vein and to its extraction, he remained liable to the surface owners for a breach of the duty to provide subjacent support.

---

[7.] In their brief, the Ormans make much of the fact that the lease provided that Fuel, Inc. could remove the coal "without being required to leave or provide subjacent or sublateral support for the overlying strata or surface or anything therein, thereon or thereunder." R. at 1118. According to the Ormans, this provision specifically authorized Fuel, Inc. to disregard the law and to leave the Ormans' property without subjacent support. We do not agree with this interpretation. The

lease required Fuel, Inc. to obtain the necessary permits and to comply with all state and local laws. The permit obtained by Fuel, Inc. did not encompass the coal underlying the Ormans' land. Thus, by mining this coal, Fuel, Inc. disobeyed its permit and the laws, and was in breach of its lease agreement. We do not find that Haseman authorized such conduct by the provisions of the lease.