Patti **WHITTAKER** and Delbert Whittaker, Appellants (Plaintiffs Below),

v.

**FEDERAL CARTRIDGE CORPORATION and The Marlin Firearms Company,** Appellees (Defendants Below).

No. 3–583A128.

Court of Appeals of Indiana, Third District.

July 31, 1984.

Rehearing Denied Oct. 2, 1984.

Fred R. Jones, Goodrich, Jones & Huff, Plymouth, for appellants.

P. Gregory Cross, Cross, Marshall, Schuck, Deweese & Cross Professional Corporation, Muncie, for amicus curiae Indiana Trial Lawyers Ass'n.

Edward N. Kalamaros, Michael J. Anderson, Edward N. Kalamaros & Associates, Professional Corporation, South Bend, for appellees.

STATON, Presiding Judge.

Patty Whittaker was injured while using a rifle which was manufactured by Marlin Firearms (Marlin) and which was loaded with ammunition manufactured by Federal Cartridge (Federal). She and her husband brought a products liability action against Marlin and Federal.[1] The trial court granted summary judgment against the Whittakers on the grounds that their action was barred by the statute of limitations in IC 33–1–1.5–5. The Whittakers' appeal raises the following issue:

> Whether the trial court erred in holding that the statute of limitations for products liability actions begins to run when the manufacturer sells the product to the next entity in the chain of distribution rather than upon delivery of the product to an actual user or consumer.

We reverse.[2]

IC 33–1–1.5–5 provides in part:

> "[A]ny product liability action must be commenced within two (2) years after the cause of action accrues or within ten (10) years after the delivery of the product to the initial user or consumer."

The Whittakers' complaint was filed in August of 1982. The undisputed evidence before the trial court was that Marlin manufactured the rifle in 1947 and sold it to "jobbers and retailers" in 1948. Delbert Whittaker's mother purchased the rifle in 1977 or 1978 from an estate. Federal manufactured the ammunition in 1968 and sold it to retailers in 1969. Delbert Whittaker purchased the ammunition from a retailer in 1973.

The trial court ruled that the ten year statute of limitations began to run when Marlin and Federal delivered the rifle and ammunition to retailers, which is thirty-four years and thirteen years, respectively, before the Whittakers filed their complaint. We disagree with the court's interpretation that the language in IC 33–1–1.5–5, "within ten (10) years after the delivery of the product to the initial user or consumer," refers to delivery of the product to any purchaser from the manufacturer regardless of whether that purchaser is a retailer,

---

1. Ind.Code 33–1–1.5–3 (West's A.I.C.1983).

2. Our disposition of this case makes it unnecessary for us to address the Whittakers' constitutional challenges to the trial court's interpretation of IC 33–1–1.5–5.
   Also, the Whittakers appeal from the court's entry of summary judgment in favor of Marlin and Federal on a breach of implied warranty count. We affirm the trial court because the evidence is undisputed that privity of contract is lacking between the Whittakers and Marlin and Federal. *See Candlelight Homes, Inc. v. Zornes* (1981), Ind.App., 414 N.E.2d 980. The Whittakers claim alternatively, however, that their breach of implied warranty count sounded in tort and not in contract. In that case, the count was duplicitous with the strict liability count which is addressed in the text of this opinion. *Neofes v. Robertshaw Control Company* (D.C. Ind., 1976), 409 F.Supp. 1376.

dealer, or any other intermediary along the chain of distribution.

IC 33–1–1.5–3 provides:

"(a) One who sells any product in a defective condition unreasonably dangerous to any user or consumer or to his property is subject to liability for physical harm thereby caused to the user or consumer or to his property if that user or consumer is in the class of persons that the seller should reasonably foresee as being subject to the harm caused by the defective condition, and if:

(1) the seller is engaged in the business of selling such a product, and

(2) the product is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

(b) The rule stated in Subsection (a) applies although

(1) the seller has exercised all possible care in the preparation and sale of this product, and

(2) the user or consumer has not bought the product from or entered into any contractual relation with the seller."

IC 33–1–1.5–2 provides the following definitions:

"'Seller' includes a manufacturer, a wholesaler, a retail dealer or a distributor.

'User or consumer' shall include: a purchaser; any individual who uses or consumes the product; or any other person who, while acting for or on behalf of the injured party, was in possession and control of the product in question."

Again, IC 33–1–1.5–5 provides in part:

"[A]ny product liability action must be commenced within two (2) years after the cause of action accrues or within ten (10) years after the delivery of the product to the initial user or consumer."

The plain meaning of the statute is that the period of limitations commences at the time the product is delivered from the manufacturer, wholesaler, retailer, or distributor to the first consuming entity. It is clear from the statutory language and defi-

nitions that the term "seller", which "includes a manufacturer, a wholesaler, a retail dealer, or a distributor", and the term "user or consumer" are mutually exclusive. Marlin and Federal would have us believe, as did the trial court, that the term "initial user or consumer" in IC 33–1–1.5–5 includes those retailers and other intermediaries. Again, we need only look to the definitions provided in IC 33–1–1.5–2 to dismiss this contention. The term "seller" encompasses not only manufacturers but also the intermediaries. "User or consumer" does not.

■ Indiana's Product Liability statute is a codification of the common law of products liability which had been adopted in this state. *See*, IC 33–1–1.5–3; *Cornette v. Searjeant Metal Products, Inc.,* (1970), 147 Ind.App. 46, 258 N.E.2d 652. The common law was essentially an adoption of the Restatement 2d of Torts § 402A to which an explanatory comment provides in part:

"1. *User or consumer.* In order for the rule stated in this Section to apply, it is not necessary that the ultimate user or consumer have acquired the product directly from the seller, although the rule applies equally if he does so. *He may have acquired it through one or more intermediate dealers.*" (Emphasis added.)

Restatement 2d of Torts § 402A, comment 1. It is clear that the authors of § 402A did not contemplate intermediate dealers to be within the scope of the definition of "user or consumer".

In *Cornette, supra,* our Court adopted § 402A and quoted from it as follows:

"On whatever theory, the justification for the strict liability has been said to be that the seller, by marketing his product for use and consumption, has undertaken and assumed a special responsibility toward any member of the consuming public who may be injured by it; that the public has the right to and does expect, in the case of products which it needs and for which it is forced to rely upon the seller, that reputable sellers will stand behind their goods; that public pol-

icy demands that the burden of accidental injuries caused by products intended for consumption be placed upon those who market them, and be treated as a cost of production against which liability insurance can be obtained; and that the consumer of such products is entitled to the maximum of protection at the hands of someone, and the proper persons to afford it are those who market the products."

*Cornette, supra,* 258 N.E.2d at 656 *quoting* R. 2d Torts § 402A, comment c. This enunciation of the policy behind strict products liability reveals again the juxtaposition in products liability law between the using and consuming public on the one hand, and all those entities who have marketed the product, manufacturers and otherwise, on the other hand.

■ Marlin and Federal rely primarily for their interpretation of the statute on the inclusion of the word "purchaser" under the definition "user or consumer." They contend that this "purchaser" refers to any intermediary who purchases the product from the manufacturer, so that the statute of limitations would begin to run upon delivery to that intermediary. Again, our plain reading of the statute and of Indiana common law on products liability prohibits that interpretation. We agree with the Whittakers that the separation of the term "purchaser" from the phrase "any individual who uses or consumes the product" in the definition of "user and consumer" was most likely intended to reflect the breadth of the class of plaintiffs as described in comment 1 to § 402A.

"It is not even necessary that the consumer have purchased the product at all. He may be a member of the family of the final purchaser, or his employee, or a guest at his table, or a mere donee from the purchaser. The liability stated is one in tort, and does not require any contractual relation, or privity of contract, between the plaintiff and the defendant."

Second Restatement of Torts, § 402A, comment 1.[3]

Indiana's enactment of its statute of limitations for products liability actions came about as a result of lobbying efforts by sellers of products. *See Vargo, Products Liability,* 15 Ind.L.Rev. 289 (1982). They convinced the legislature that soaring insurance costs had created a "crisis" in industry and that the remedy was enactment of a statute which would, at some point, cut off claims previously actionable. *Id.*

The issue in this case, which we have resolved by a plain reading of the statute, is *at what point* our legislature purported to cut off those claims. Therefore, Marlin and Federal do not advance their argument at all by pointing out that the purpose of IC 33–1–1.5–5 was to limit the time within which a claim may be brought. That is the purpose of any statute of limitation.

Marlin and Federal have asked us to affirm the trial court and to read the statute as cutting off products liability claims ten years after the product has been sold by the manufacturer.[4]

The trial court stated in its order as follows:

"[T]he statute is a statute of repose limiting actions against manufacturers of goods to a period of ten years after the goods pass out of the control of the manufacturer even though some jobber or dealer might retain the goods in inventory for many years before the good [*sic*] actually pass into the hands of the consumer."

---

**3.** Besides, Marlin's and Federal's approach would create an aberrant result: the statute of limitations would begin to run when an intermediary purchases the product from the manufacturer; however, the statute of limitations would not begin to run when an intermediary receives the product on consignment.

**4.** For an example of a statute which *would* cut off claims involving products older than ten years, *see* Utah's products liability statute which provides in part:

"78–15–3. Statute of limitations—Application—(1) No action shall be brought for the recovery of damages for personal injury, death or damage to property more than six years after the date of initial purchase for use or consumption, *or ten years after the date of manufacture.*" (Emphasis added.)

Illustrative of the problem would be the circumstance in which an auto manufacturer, in the year 1968 manufactured parts for an automobile sold during that year; which parts in that year were delivered to an automotive supply house who purchased for inventory. If no call was made for the item and it remained in inventory for ten years and then sold to the consumer the period during which the manufacturer remains exposed becomes twenty years, because the consumer has ten years and the good [*sic*] lay in inventory for ten years but out of the control of the manufacturer. To hold that the ten year limitation is hinged upon the date upon which the consumer acquires the goods having ignoring [*sic*] the years in which it may lay in inventory in the hands of a retailer or wholesaler out of the control of the manufacturer would be effectively to extend the limitation to twenty years which to the Court appears to defeat the purpose of I.C. 33–1–1.5[–5]."

 We believe the trial court misread the statute. Furthermore, we note that by the trial court's interpretation and by its own example, a consumer's cause of action could be extinguished even before the product comes into his possession. If the automobile part from the court's example is in inventory for ten years after leaving the manufacturer's control and before purchase, then the consumer, probably unknowingly, will purchase a product over which he has no cause of action if he is injured. We believe the clear intent of our legislature was to balance the competing interests between sellers and consumers, at least on this point, in favor of the consumer. We embrace the following language from another jurisdiction:

"Any unfairness to defendants in requiring them to defend against unavoidably delayed actions is more than balanced by the intrinsic injustice of barring plaintiff's action before it can reasonably be brought."

*Romano v. Westinghouse Elect. Co.*, 114 R.I. 451, 461, 336 A.2d 555, 560 (1975).

Because the trial court misinterpreted the meaning of IC 33–1–1.5–5, we find that there exists a genuine issue of fact as to whether the Whittakers' complaint was timely filed. Accordingly, we reverse.

GARRARD, J., concurs.

HOFFMAN, J., concurs in result.