**Vernon Ray WILSON and Vicki L, Wilson, Plaintiffs,**

v.

**STUDEBAKER–WORTHINGTON, INC., Turbodyne Corporation, McGraw Edison, Inc., Goulds Pumps, Inc., Masoneilan International, Inc., Raytheon Co. and United Engineers & Constructors, Inc., Defendants.**

**STUDEBAKER–WORTHINGTON, INC., Turbodyne Corporation and McGraw Edison, Inc., Third–Party Plaintiffs,**

v.

**GENERAL ELECTRIC COMPANY, Third Party Defendant.**

No. EV 80–259–C.

United States District Court, S.D. Indiana, Evansville Division.

Feb. 9, 1987.

George A. Porch, Phillip L. Kiely, Theodore Lockyear, Evansville, Ind., for plaintiffs.

McDermott, Will & Emery, Chicago, Ill., and R. Stephen LaPlante, Evansville, Ind., for McGraw Edison, Studebaker–Worthington, Turbodyne Corp. & Masoneilan Intern., Inc.

Thomas H. Bryan, Evansville, Ind., for Goulds Pump.

George A. Porch, Evansville, Ind., for General Elec.

Kightlinger, Young, Gray & DeTrude, Evansville, Ind., for Raytheon Co.

## ORDER

BROOKS, Chief Judge.

This matter is before the Court upon a plethora of motions filed by the litigants herein, which include motions to reconsider, motions for summary judgment, and motions to dismiss.

On November 10, 1983, this Court entered an order in favor of defendants, Goulds Pumps, Inc. ("Goulds"), United Engineers & Constructors, Inc. ("United Engineers"), and Studebaker–Worthington, Inc. ("Studebaker") for summary judgment as to Counts I, III, and V of the second amended complaint. The Court also granted the motion to dismiss filed by defendants, United Engineers and Goulds, on Count IV, and the Court granted Studebaker's motion for summary judgment as to Count IV. Defendant Raytheon Co. was

awarded summary judgment on all counts. 582 F.Supp. 383.

## PROCEDURAL SUMMARY

The Court based its prior decision on *Dague v. Piper Aircraft Corp.*, 275 Ind. 520, 418 N.E.2d 207 (1981), by stating that plaintiffs' cause, as relating to the above-mentioned counts, were barred by the product liability statute of limitations. The Court entered its judgment entry eleven (11) days later dismissing the counts mentioned herein. Thereafter, Goulds, Masoneilan International, Inc. ("Masoneilan") and United Engineers filed their summary judgment on Counts II and VI, which pertained to the remaining counts and was later updated on December 6, 1983. The parties proceeded to brief their respective positions on Counts II and VI. On April 18, 1984, the Court signed the Proposed Findings of Fact and Conclusions of Law submitted by one of the defendants in November, 1983, which ruled in favor of the defendants on their second summary judgment. Subsequently, the Court ordered the parties together for a status conference to be held on December 14, 1984. It was at this status conference that the Court informed the parties that the signing of the Proposed Findings of Fact and Conclusions of Law hereinabove mentioned was due to inadvertence. The facts surrounding the signing are not known, but what is clear is that the Court did not intend to sign the same. The plaintiffs, joined by General Electric Company ("G.E."), filed a motion for relief pursuant to Rule 60 on December 18, 1984. The Rule 60(b) motion was primarily directed at relieving the plaintiffs and G.E. from the effect of the Findings of Fact and Conclusions of Law that the Court inadvertently signed on April 18, 1984. Included in the Rule 60(b) motion was a request for staying discovery and action pending the Indiana Supreme Court's decision on the petition to transfer in *Whittaker v. Federal Cartridge Corporation*, 466 N.E.2d 480 (Ind.App.1984), and a general prayer for all other proper relief. The defendants subsequently filed motions in opposition to the Rule 60(b) motion hereinabove mentioned.

The Court, on August 16, 1985, entered an order holding that the signing of the Proposed Findings of Fact and Conclusions of Law on April 18, 1984 occurred through inadvertence and, accordingly, vacated the April 18 order. This order was followed by a second motion to reconsider and was also filed by the plaintiffs and G.E. This latter motion requested the Court to reconsider its position on the entire case in view of the *Whittaker* decision. The Court granted this second motion to reconsider on August 23, 1985 and set for hearing all motions for summary judgment, which hearing was set for September 30, 1985. The defendants then filed their motions for reconsideration. In reviewing the motions to reconsider filed by the defendants, it appears to the Court that they refer to the Court's summary judgment entry of November 10, 1983 and April 18, 1984, respectively. A hearing was conducted on the motions to reconsider which resulted in one of the defendants, United Engineers, filing yet another summary judgment. Briefs in opposition and in support of United Engineer's partial summary judgment were filed and then heard on February 21, 1986. Nothing has happened in this cause since February of 1986. Hence, the Court is presented with the task of deciding what course to chart for the instant case to get the same sailing to a trial date.

From reviewing the record, it would appear that the appropriate action at this juncture of the case is to recommence. But first, however, there are questions relating to the motions to reconsider and whether the Court erred in setting aside the entry of summary judgment on November 10, 1983 and November 18, 1984, that need to be addressed.

## MOTION TO RECONSIDER

As noted hereinabove, the Court on April 18, 1984 signed an order entitled "Proposed Findings of Fact and Conclusions of Law" with the word "Proposed" being inked out. The order was submitted by some of the defendants in support of their summary judgment in December of 1983. Inexplicably, the tendered order was signed, which

prompted the plaintiffs and G.E. to file a Rule 60(b) motion. Once the Rule 60(b) motion was fully briefed by the parties, the Court entered an order expunging from the docket the Findings of Fact and Conclusions of Law entered on April 18, 1984, and based its decision on the Court's inadvertence. Approximately a week later, plaintiffs and G.E. moved the Court to reconsider all motions for summary judgment. The Court then assigned for oral argument the motions for summary judgment.

Prior to reaching the merits of the instant cause, the Court must first ascertain whether all of the procedural hoops were cleared. That is, whether the plaintiffs and G.E. have timely raised their arguments.

The Court's decision of November 10, 1983 and the subsequent judgment entry eleven (11) days later do not constitute a final decision.

The initial issue presented by the Court is whether this Court may reconsider its ruling granting the defendants summary judgment on Counts I, III, IV, and V of plaintiffs' complaint. Such a question, under normal circumstances, does not pose a difficult endeavor. With the instant factual setting, however, answering such a question is not as easy as one might suspect.

As for the Court's order of April 18, 1984, in which the Court granted summary judgment for defendants, Goulds, Masoneilan, Raytheon, United Engineers on Counts II and VI of plaintiffs' complaint, the issue facing the Court now is whether the judgment may be set aside pursuant to Rule 60(b).

Plaintiffs and G.E. filed a motion for an order correcting the Court's inadvertent signature on the Proposed Findings of Fact and Conclusions of Law entered on April 18, 1984, or, in the alternative, for an order pursuant to Rule 60(b)(1). In support of the motion to reconsider, the movants contend that no notice was given for a hearing and, in fact, no hearing was held on defendants' summary judgment relative to Counts II and VI. (Such a position on the latter point is tenuous, for under Local Rule 10 of the Southern District of Indiana, hearings are discretionary with the trial judge.)

Nonetheless, no judgment entry was ever entered on Counts II and VI, thus the movants contend, that such entry is not final. Moreover, it was not until December 14, 1984, at a pretrial conference, that the movants first became aware of the Court signing the Proposed Findings of Fact and Conclusions of Law. The movants, understandably experiencing shock, felt compelled to review their records and ascertain whether they each received service of the Court's order. G.E. maintains that while service is shown on the Court's record, its counsel did not receive the same. The plaintiffs, on the other hand, admit to possessing three Proposed Findings of Fact and Conclusions of Law, but only one of them is signed by the Court. Counsel for plaintiffs adamantly contends that it was not until December 14, 1984 that they first became aware that one of the three orders was signed. The movants finally argue that the April 18, 1984 order cannot constitute a final order, for such order was not in the form used by this Court or as required by the Federal Rules of Civil Procedure.

The defendants counter by stating that they each received signed copies of the Proposed Findings of Fact and Conclusions of Law. Furthermore, defendants contend that plaintiffs had thirty (30) days in which to file their appeal after the Court entered its order on April 18, 1984, and by failing to do so renders the movants without a remedy. The Court's entry for April 18, 1984 shall be set aside for the reasons mentioned hereinafter.

Federal Rule of Civil Procedure 60(b)(1) provides:

"On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect...."

Prior to the 1948 amendment to Rule 60(b)(1), relief was accorded only to the movant provided he made the blunder. 11 Wright & Miller, *Federal Practice and Procedure*, § 2858. See 5 F.R.D. at 479. After 1948, however, Rule 60(b)(1) relief was expanded to include neglect of others,

which includes the court. *Id., CRI, Inc. v. Watson,* 608 F.2d 1137, 1143 (8th Cir.1979); *Hoffman v. Celebrezze,* 405 F.2d 833 (8th Cir.1969). A requirement of Rule 60(b)(1) is that such a motion be timely, for failure to timely file shall result in denying relief.

Plaintiffs and G.E. have sought relief from the entry of April 18, 1984 under Rule 60(b), and have based such motion on either the Court's own inadvertence or upon the movant's excusable neglect. On August 16, 1985, this Court entered an order vacating its earlier order of April 18, 1984 due to the Court's own inadvertence as grounds therefor. In support of the defendants' motions to reconsider, they direct the Court's attention to the Court's judgment book, "O.B. Vol. 18, p. 11 Entered 4/19/84" which demonstrates that the Court inked out the word "Proposed" in the previously submitted Proposed Findings of Fact and Conclusions of Law. Moreover, the April 18, 1984 order contained the requisite language of Rule 54(b). Lastly, the defendants contend that the docket entry sheet reflects that the order was entered by the Court with the Rule 54(b) language included.

■ This circuit has held that "[r]elief from a judgment under Rule 60(b) is an extraordinary remedy and is granted only in exceptional circumstances." *United States v. One 1979 Rolls–Royce Corniche Convertible,* 770 F.2d 713, 716 (7th Cir. 1985). In order for a movant to obtain relief, three elements must be satisfied: (1) "good cause" for the default; (2) "quick action to correct it"; and (3) a "meritorious defense" to the complaint. *Id.* at 716; *Bennett v. Circus U.S.A.,* 108 F.R.D. 142, 146 (N.D.Ind.1985).

■ In applying the above-mentioned test to the case at bar, the Court notes that "good cause" does exist to satisfy the first element. The "good cause" is the Court's inadvertence in signing the tendered Proposed Findings of Fact and Conclusions of Law, for the Court did not intend to sign such order nor does the Court remember any such signing or deliberation. As for the second factor, the Court believes it is satisfied as well. The record reflects that

a status conference was held on December 14, 1984, which the movants have successfully argued to the Court that this is the first time they were aware that the Court signed the tendered Proposed Findings of Fact and Conclusions of Law. Since this is the first occasion that the movants discovered the Court's inadvertent order, then when the movants filed their joint motion for relief on December 18, 1984, is "quick action to correct" the same pursuant to element two. The third element will be addressed hereinafter, but for the foregoing reasons, the Court GRANTS the plaintiffs and G.E.'s motion to reconsider as to the entry of April 18, 1984.

## FACTUAL SUMMARY

The facts relating to the commencing of the statute of limitations on the products liability action herein are largely undisputed. Consequently, the Court is going to reiterate the facts section of its prior order in the aforementioned cause of November 10, 1983, which ostensibly answered the issue at bar. The facts read as follows:

In January, 1969, G.E. entered into a contract with United Engineers for the design and construction of polycarbonate manufacturing facilities at the G.E. plant in Mount Vernon, Indiana. As part of the design and construction contract, United Engineers was responsible for the expansion of the boiler facilities on the plant premises. This expansion required the installation of an additional boiler and feedwater pump to maintain a continuous supply of water to the additional boiler. Various bids were accepted on the supply of the feed-water pump. The lower bidder was Goulds. In accordance with the express specification of G.E. and United Engineers that a Worthington Corporation U2R turbine be utilized to drive the feed-water pump, Goulds purchased the turbine from Studebaker. Following shipment of the turbine on September 11, 1969, employees of Goulds mounted the turbine on a base plate with the feed-water pump and placed a coupling device between the two pieces of equipment. Goulds then shipped the turbine-pump assembly to G.E. on September

29, 1969, for final installation in the G.E. plant. The turbine and pump assembly arrived at the Mount Vernon plant on October 3, 1969, and was thereafter put into service. The accident which is the subject of this lawsuit occurred on October 2, 1979.

## ISSUE

■ Where a corporation accepts a company's bid on a particular project and then expressly directs that company to obtain a certain product from a certain manufacturer and such a product is purchased and assembled at the company's facility which promptly ships such assemblage to the original corporation, does the running of the products liability statute of limitations commence when the company who won the bid job purchased it from the manufacturer or does it commence when the product reaches its final destination?

## MEMORANDUM

The controlling statute for the instant question is Ind.Code § 33–1–1.5–5, which provides:

"[A]ny product liability action * * * must be commenced within two (2) years after the cause of action accrues or within ten (10) years *after the delivery of the product to the initial user or consumer; except* that, if the cause of action accrues more than eight (8) years but not more than ten (10) years after that initial delivery, the action may be commenced at any time within two (2) years after the cause of action accrues." (Emphasis added.)

A plaintiff must bring his claim within two years from the accrual of the injury (the statute of limitations); *and,* his claim must be brought within ten years of the delivery of the product to the initial user or consumer (the statute of repose). *Dague v. Piper Aircraft Corp.,* 275 Ind. 520, 418 N.E.2d 207 (1981).

In the present action, Goulds received the turbine from Studebaker (September 11, 1969) and then assembled the turbine on a base plate with the feed-water pump. Thereafter, Goulds shipped the turbine assemblage to G.E. on September 29, 1969, which G.E. received on October 3, 1969 for installation of its plant.

Wilson correctly contends that the interpretation of the phrase "initial user or consumer" as found in I.C. 33–1–1.5–5 is critical to the motion at bar. Plaintiffs' argument is two-fold: The finished product is the turbine assemblage and not the turbine itself, and that the period of limitations commenced on October 3, 1969 when G.E., the initial user or consumer, received the turbine assemblage. Thus, plaintiffs argue, their cause of action arrived within the ten-year limit and was filed December 31, 1980, which is within the two-year statute of limitations.

The defendants, on the other hand, adamantly contend that the period of limitations commenced on September 11, 1969, when the turbine was shipped to Goulds for assemblage. In furtherance of this position, defendants cite I.C. 33–1–1.5–2 which provides in relevant part:

" 'User or consumer' means *a purchaser,* any individual who uses or consumes the product, or any other person who, while acting for or on behalf of the injured party, was in possession and control of the product in question. . . ." (Emphasis added.)

Simply stated, defendants assert that Goulds, as a purchaser of the turbine, qualifies as a user or consumer as defined by I.C. § 33–1–1.5–2.

Defendants cite the Court to *Dague v. Piper Aircraft Corp.,* 418 N.E.2d 207, which this Court relied on in its previous decision in this matter. In *Dague,* plaintiff's decedent was in a plane crash on July 7, 1978, and subsequently died two months later. The airplane was manufactured in 1965 and placed into the stream of commerce on March 26, 1965. The Indiana Supreme Court, in answering four questions that had been certified to it by the Seventh Circuit, held that plaintiff's action was time barred since the action accrued more than ten years after the airplane was placed in commerce. The *Dague* court construed the intent of the legislature in product liability cases is to limit the time within

which to bring a product liability action. That is, the legislature intended to place an absolute time limit on liability for a product's defects.

The plaintiffs' sole basis in their motion to reconsider is *Whittaker v. Federal Cartridge Corp.*, 466 N.E.2d 480 (Ind.App. 1984), *trans. dismissed*, which considered the definition of "user or consumer" as found in I.C. 33–1–1.5–2 for determining when the period of limitations commences. The plaintiff in *Whittaker* sued under the products liability act after she was injured while using a rifle manufactured by defendant, Marlin Firearms, which was loaded with ammunition manufactured by defendant, Federal Cartridge. The evidence revealed that Marlin manufactured the rifle in 1947 and sold it to jobbers and retailers in 1948. Plaintiff obtained the rifle in 1977 or 1978 from an estate. The ammunition was manufactured in 1968 and sold to retailers in 1969. Plaintiff purchased the ammunition from a retailer in 1973. The *Whittaker* court, in reversing the lower court, held that the period of limitations commences at the time the product is delivered from the manufacturer, wholesaler, retailer, or distributor to the first consuming entity. In reaching its conclusion, the *Whittaker* court delved into the common law, which serves as a basis for the existing products liability statute, and discovered that "user or consumer" as found in Restatement 2d of Torts § 402A did not contemplate that intermediate dealers be within the scope of the definition of "user or consumer." *Id.* 466 N.E.2d at 482.

Perhaps the major point in *Whittaker* was its grasp for practicality. Although the clear intent of the legislature was to cut off strict liability actions within ten years, it was not the legislature's intent to deprive a consumer his right to sue before it accrued.

In applying the foregoing guidelines to the instant case, the immediate and conclusive task for the Court is to determine the status of Goulds. Is Goulds a "user or consumer" as defined by I.C. § 33–1–1.5–2? Briefly recanting the facts, Goulds purchased the turbine from the manufacturer pursuant to the express direction from G.E. and United Engineers. The manufacturer shipped the turbine to Goulds on September 11, 1969 for assemblage of the turbine with base plate and pump, which Goulds subsequently did and shipped the same to G.E. on September 29, 1969. The turbine assemblage reached the G.E. plant facility on October 3, 1969. The turbine exploded on October 2, 1979, and plaintiffs' action was filed on December 31, 1980.

> Stated again, I.C. 33–1–1.5–5 provides: "[A]ny product liability action * * * must be commenced within two (2) years after the cause of action accrues *or* within ten (10) years after the delivery of the product to the initial user or consumer; except that, if the cause of action accrues more than eight (8) years but not more than ten (10) years after the initial delivery, the action may be commenced at any time within two (2) years after the cause of action accrues."

The case at bar purports to fall within the exception, for if the plaintiffs can show that their cause of action accrued less than ten (10) years after the initial delivery of the turbine, the plaintiffs' action was brought within two (2) years after it accrued. Hence, in order for plaintiffs to prevail, they must demonstrate that the statute commenced running on October 3, 1969 when G.E. received the turbine from Goulds.

I.C. 33–1–1.5–2 defines the terms "seller" and "user or consumer" in the following manner:

> " 'Seller' means * * * a manufacturer, a wholesaler, a retail dealer, * * * or a distributor.
> " * * *
> " 'User or consumer' means a purchaser, any individual who uses or consumes the product, or any other person who, while acting for or on behalf of the injured party, was in possession and control of the product in question...."

As heretofore mentioned, the *Whittaker* court interpreted the terms "seller" and "user or consumer" as mutually exclusive. *Id.* 466 N.E.2d at 482. That is, "seller" refers to the intermediaries while "user or consumer" does not. At bar, however,

Goulds is not labeled an intermediary in the true sense that Marlin or Federal Cartridge was in *Whittaker*. Hence, at first blush it would appear that Goulds is a "user or consumer." Such a conclusion is premature for the Court must delve further into the purpose of strict liability, which was enunciated in *Cornette v. Searjeant Metal Products, Inc.*, 147 Ind.App. 46, 258 N.E.2d 652 (1970).

> "On whatever theory, the justification for the strict liability has been said to be that the seller, by marketing his product for use and consumption, has undertaken and assumed a special responsibility toward any member of the consuming public who may be injured by it; that the public has the right to and does expect, in the case of products which it needs and for which it is forced to rely upon the seller, that reputable sellers will stand behind their goods; that public policy demands that the burden of accidental injuries caused by products intended for consumption be placed upon those who market them, and be treated as a cost of production against which liability insurance can be obtained; and that the consumer of such products is entitled to the maximum of protection at the hands of someone, and the proper persons to afford it are those who market the products." *Cornette* at 258 N.E.2d 656, quoting Restatement 2d *Torts* § 402A.

This passage demonstrates the polarity involved between the consumer and sellers of products. As the *Whittaker* court balanced the competing interests in favor of the consumer, so too must this court. For, in the case at bar, the analogy of having plaintiff's cause of action accruing before he obtains the product is likewise applied to the instant case. Goulds, while not possessing all the acumens of a true retailer, functions a go-between and not of user or consumer of the product. Consequently, the period of limitations is found to have commenced when G.E., the first consuming entity, obtained possession of the turbine.

### UNITED ENGINEERS
### SUMMARY JUDGMENT

United Engineers entered into a contract on January 30, 1969 entitled "Design and Construct Contract." Under the terms of the contract, United Engineers was responsible for the expansion of the boiler facilities on the plant premises. United Engineers contends that services it rendered (design, procurement, and construction) were at all times subject to the specifications established by G.E. pursuant to the contract heretofore mentioned.

As part of the expansion, an additional boiler feed pump was required along with a turbine to power the same. Defendant Gould won the bid to provide the feed-water pump and the requisite turbine. Gould purchased the turbine from Worthington–Turbodyne. Gould shipped the feed-water pump package to G.E. The feed-water pump package was arranged in accordance with the express specifications of G.E. and United Engineers. Once the feed-water package reached the Mt. Vernon plant, Gould tendered a bill. Pursuant to the design and construction contract, Gould was to procure the necessary equipment, but payment derived solely from G.E. provided United Engineers authorized or consented to the equipment that was procured. After the feed-water pump and turbine were installed and became operational, an accident ensued in which the newly purchased turbine malfunctioned resulting in injuries to the plaintiff.

Apparently, United Engineers conducted its business out of a trailer parked at the Mt. Vernon plant which contained two G.E. representatives. One was an accountant, and the other a construction man. The G.E. accountant would arrange for the payment, but only after United Engineers gave its authorization.

Discretion plays no role in the granting of summary judgment. A court only has discretion to deny summary judgment. *E.G., National Screen Serv. Corp. v. Poster Exchange, Inc.*, 305 F.2d 647 (5th Cir.1962). It has been repeatedly held that despite all that may be shown, the Court always has the power to deny summary judgment if, in its sound judgment, it believes for any reason that the fair and just course is to proceed to trial rather than to resolve the case on a motion. *Kennedy v. Silas Mason Co.*, 334 U.S. 249, 68 S.Ct.

1031, 92 L.Ed. 1347 (1948); *Flores v. Kelley*, 61 F.R.D. 442 (D.C.Ind.1973); *see also, Western Chain Co. v. American Mut. Liability Ins. Co.*, 527 F.2d 986, 990 n. 5 (7th Cir.1975). Thus, an appraisal of the legal issues may lead the Court to exercise its discretion and deny summary judgment motions in order to obtain the fuller factual foundation afforded by a plenary trial. *Kennedy v. Silas Mason Co., supra.*

The standard of review for a motion for summary judgment was clearly set out by the United States Circuit Court of Appeals for the Seventh Circuit:

"While Rule 56 does contemplate that 'the allegations of fact in the pleadings may be pierced' by admissions, depositions and affidavits which show, in fact, that no genuine issues of fact exist. Unless such evidentiary matters submitted in a particular case clearly show 'that there was no issue of fact to be tried', the court 'is not permitted to try on the affidavits submitted an issue of fact which is presented by the pleadings.' If, upon the proofs adduced in support of a motion for summary judgment, any doubt remains as to the existence of a genuine issue of material fact, such doubt must be resolved against the movant for summary judgment and the motion for summary judgment must be denied. (Citation omitted.)"

*Moutoux v. Gulling Auto Electric, Inc.*, 295 F.2d 573, 576 (7th Cir.1961).

Clearly, Federal Rules Civil Procedure, Rule 56 requires more than persuasive evidence. As a particular matter, the rule requires the absence of evidence to the contrary of movant's evidence. In summary judgment procedure, it is not the province of the trial court to weigh the evidence of one party against the other; rather, the duty of the trial court is to determine whether factual controversies exist.

■ The Court, having examined the entire record of this controversy, believes that in the interest of sound judicial administration, the Court must withhold decision of the ultimate questions involved in this case until it is presented with a more solid basis of findings based upon litigation or upon a comprehensive statement of agreed facts. *Kennedy v. Silas Mason Co., supra*, 334 U.S. at 257, 68 S.Ct. at 1034.

The term "product" as defined by I.C. 33–1–1.5–2 provides in relevant part as follows:

" 'Product' ... does not apply to a transaction that, by its nature, involves wholly or predominantly the sale of a service rather than a product."

In a nutshell, United Engineers attempts to persuade the Court that it provided merely professional services, and hence could not be held liable on a products liability theory. The movant further asserts that it never entered into the stream of commerce as a purchaser or manufacturer to bring it within the perview of strict liability actions. Plaintiffs retort that United Engineers procured this product and was in charge of design, testing, and acceptance of the materials. Plaintiffs further contend that the facts are not developed enough to adequately determined the cause of the turbine explosion. Therefore, the Court finds that a genuine issue of material fact does exist at this juncture of whether United Engineers provided wholly professional services. United Engineers' motion for summary judgment is DENIED.

IT IS SO ORDERED.