**ESTATE OF William F. SHEBEL, Jr. by Dolores SHEBEL, Personal Representative, Appellant/Cross Appellee (Plaintiff below),**

v.

**YASKAWA ELECTRIC AMERICA, INC. and Mori Seiki Co., Ltd., Appellees/Cross–Appellants (Defendants below).**

No. 46S03–9707–CV–417

Supreme Court of Indiana.

June 22, 1999.

Gene M. Jones, Mark A. Lienhoop, La-Porte, Indiana, Attorneys for Appellant.

Douglas K. Dieterly, David R. Kibbe, Stanley C. Fickle, Anne N. DePrez, South Bend, Indiana, Larry G. Evans, Valparaiso, Indiana, Tracy C. Beggs, Chicago, Illinois, Attorneys for Appellee.

## ON PETITION TO TRANSFER

BOEHM, Justice.

The Products Liability Act bars product liability claims for injuries sustained more than ten years after the product is delivered to its "initial user or consumer." *See* IND. CODE § 33–1–1.5–5 (1993).[1] We hold that a "user or consumer" under this statute includes a distributor who uses the product extensively for demonstration purposes and that the ten year statute begins with delivery for this use.

---

1. This section, along with the rest of the product liability provisions, was repealed by Public Law 1–1998, § 221. These provisions are now codified at §§ 34–20–1–1 to 34–20–9–1 (1998). This statute's definitions of "consumer" and "user" now appear at Indiana Code §§ 34–6–2–29 & 34–6–2–147. References in this opinion are to the statutes in force at the time of the suit.

## Factual and Procedural Background

On January 10, 1992, William Shebel, Jr. was struck in the chest and killed by a piece of a computer controlled lathe. The piece flew from the machine when it crashed as Shebel was delivering a bill to Bruce Kaufman who was operating the lathe.[2] Shebel's Estate filed a products liability action against the manufacturer of the lathe, Mori Seiki Co., Ltd., ("Mori") and an American affiliate of the company that manufactured the computer controller of the lathe, Yaskawa Electric America, ("Yaskawa").[3]

The lathe involved in the accident was sold by its manufacturer, Mori, to Yamazen Company, a trading company in Japan which in turn sold it to Yamazen, USA, Inc., ("Yamazen") its American subsidiary. The lathe was delivered to Yamazen on March 5, 1981. Yamazen purchased the lathe for the purpose of using it in demonstrations at trade shows, and in fact the lathe was used to make parts at three trade shows over the course of the next year. In January, 1982, the lathe was sold to Hasbach Company as a used "demo machine," but was returned in December of that year. Aegis Sales and Engineering Incorporated then purchased the lathe as a used machine at a discount from Yamazen and took delivery in January, 1983. The computer on the lathe indicated that the machine had been used for "hundreds" and "possibly thousands" of hours when it was delivered to Aegis. After another intermediate owner, Kaufman purchased the lathe in early 1990.

Mori and Yaskawa moved for summary judgment, arguing that the Estate's action was barred by the statute of repose and alternatively that several other defenses required summary judgment in their favor. The trial court held that, as a matter of law, Yamazen was a "user or consumer" of the lathe, and that uncontroverted facts established that Shebel's injury occurred more than ten years after the lathe was delivered to Yamazen. Accordingly, summary judgment was entered for both defendants based on the statute of repose.

The Estate appealed, arguing that the "initial user or consumer" of the lathe could not be determined as a matter of law where conflicting inferences could be drawn from the facts. The Estate also argued that genuine issues of material fact bore on the definition of "user or consumer," and that other issues precluded summary judgment.

The Court of Appeals, with Judge Garrard dissenting, reversed the trial court, holding that, as a matter of law on these undisputed facts, Yamazen as a distributor was a "seller" and not a "user or consumer." *Estate of Shebel v. Yaskawa Elec. America, Inc.,* 676 N.E.2d 1091 (Ind.Ct.App.1997). We granted the defendants' petition for transfer and now affirm the trial court's grant of summary judgment.

## Standard of Review

■ Summary judgment is appropriate when the designated evidence shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C); *see also Meridian Mut. Ins. Co. v. Auto–Owners Ins. Co.,* 698 N.E.2d 770, 773 (Ind. 1998). Although the Estate has the burden of persuading us that the grant of summary judgment was erroneous, we carefully assess the trial court's decision to ensure that the Estate was not improperly denied its day in court. *Erie Ins. Co. v. George,* 681 N.E.2d 183, 186 (Ind.1997); *Mullin v. Municipal City of South Bend,* 639 N.E.2d 278, 280–81 (Ind.1994). All facts and reasonable inferences drawn from those facts are construed in favor of the Estate. *Foster v. Auto–*

---

**2.** This gives rise to a dispute whether Shebel was a "bystander" entitled to recover under the act. *See* Ind.Code §§ 33–1–1.5–2 & 33–1–1.5–3 (1993). The issue was presented to the trial court but not resolved and we do not address it here.

**3.** Yaskawa Electric Corporation of Japan, Yaskawa's parent company was not named as a defendant. According to Yaskawa, its parent designed and manufactured the controller. Yaskawa, the U.S. affiliate, is described by the Estate in the complaint as the manufacturer, seller and servicer of the lathe. No claim is raised in this appeal that the servicing, which presumably presents different limitations and substantive law issues, is an independent basis of the claim. The Estate's appeal challenges only the trial court's ruling that Yamazen, Yaskawa's American subsidiary, was a "user" under the Act. No claim is asserted under a theory not governed by the Act.

*Owners Ins. Co.*, 703 N.E.2d 657, 659 (Ind. 1998); *Wright v. Carter*, 622 N.E.2d 170, 171 (Ind.1993).

## Initial User or Consumer

■ The threshold question in this case is whether Yamazen, who received the lathe in March of 1981, was a "user or consumer" of the lathe. If so, the Estate's action for damages resulting from the January 1992 accident is barred by the statute of repose found at Indiana Code § 33–1–1.5–5(b) (1993). That statute provides that "a product liability action must be commenced ... within ten years after the delivery of the product to the initial user or consumer."[4] Indiana, along with several other states,[5] has enacted a statute of repose to bar lawsuits after a product-related initiating event. *See* 4 LOUIS R. FRUMER & MELVIN I. FRIEDMAN, PRODUCTS LIABILITY § 26.05[1] (1998). The policies underlying this provision have been described as both a concern for the lack of reliability and availability of evidence after long periods of time and a public policy to allow manufacturers, after a lapse of a reasonable amount of time, to plan their affairs with a degree of certainty, free from unknown potential liability. *Id.* (citing *Johnson v. Star Mach. Co.*, 270 Or. 694, 530 P.2d 53, 56 (1974)). Presumably there is also an underlying assumption that after ten years a product failure is due to reasons not fairly laid at the manufacturer's door. In any event, the legislature

has determined that a product in use for ten years is no longer to be the source of its manufacturer's liability. The wisdom of this policy is for the legislature. *Dague v. Piper Aircraft Corp.*, 275 Ind. 520, 528, 418 N.E.2d 207, 212 (Ind.1981). The starting point for this ten year period is the "delivery to the initial user or consumer." The term "user or consumer" was defined at the time relevant to this case as:

> a purchaser, any individual who uses or consumes the product, or any other person who, while acting for or on behalf of the injured party, was in possession and control of the product in question, or any bystander injured by the product who would reasonably be expected to be in the vicinity of the product during its reasonably expected use.

IND.CODE § 33–1–1.5–2 (1993). As a matter of syntax, this language is susceptible to the reading that any "purchaser," including a distributor or retailer, is a "user or consumer." However, it was early held, and we agree, that "user or consumer" does not include one who merely acquires and resells. *Thiele v. Faygo Beverage, Inc.*, 489 N.E.2d 562 (Ind.Ct.App.1986); *Whittaker v. Federal Cartridge Corp.*, 466 N.E.2d 480 (Ind.Ct.App. 1984).[6]

■ The Estate cites *Whittaker* for the proposition that the identity of the "initial user or consumer" is a question of fact that

4. The statute also provides that if a cause of action accrues at least eight years but less than ten years after the initial delivery a plaintiff may sue within two years after the cause of action accrues. Ind.Code § 33–1–1.5–5(b) (1993).

5. *See* ARIZ.REV.STAT. ANN. § 12–551 (West 1992) (statute of repose starts to run at time product is "first sold for use or consumption"); COL. REV. STAT. § 13–80–107(1)(b) (1998) (statute of repose starts to run at time product is "first used for its intended purpose"); CONN GEN.STAT. ANN. § 52–577a (West 1991) (statute of repose runs from time party "last parted with possession or control"); GA CODE ANN. § 51–1–11(b)(2) (Harrison 1998) (statute of repose runs from "first sale for use or consumption"); ILL. STAT. ANN. ch. 110, § 13–213(b) (Smith–Hurd 1984) (statute of repose runs from "delivery to initial user or consumer"); NEB. REV. STAT. § 25–224(2) (1995) (statute of repose runs from time product was "first sold or leased for consumption"); N.C. GEN. STAT. § 1–50(6) (1996) (statute of repose runs from

"initial purchase for use or consumption"); OR REV STAT. § 30.905(1) (1997) (statute of repose runs from time product was "first purchased for use or consumption").

6. The recodification of the statutory definition assigns separate numbered sub-paragraphs to "purchaser" and "consumer." This fortifies the argument from the language alone that a "purchaser" is a separate category from "consumer," which is rather unhelpfully defined as "one who uses or consumes." The term "user or consumer" is now surplusage because "user" is equated with "consumer" in the recodification. IND CODE § 34–6–2–147 (1998). Nonetheless, the recodification purports not to change substantive law. *See* Preface to Indiana Acts, 1998 Ind. Acts iii. We assume such a drastic act as revocation of this line of cases restricting "purchaser" to those who use or consume would not be done buried in a recodification project and defendants do not urge revisiting that doctrine.

cannot be resolved on summary judgment. *Whittaker* closes with the statement that the timeliness of the complaint presented a question of fact. *Id.* at 484. However, on the facts before it, *Whittaker* held that delivery to an intermediary retailer did not trigger the statute of repose because the retailer as a matter of law was not a "user or consumer." There remained only a failure of the moving party to establish when the first user or consumer took delivery, not a dispute over any factual proposition.

We agree with the Court of Appeals in this case that "[w]ho is a 'user or consumer' is a purely legal question." *Estate of Shebel v. Yaskawa Elec. America, Inc.*, 676 N.E.2d 1091, 1092 (Ind.Ct.App.1997); *see also State ex rel. Paynter v. Marion County Superior Court*, 264 Ind. 345, 350, 344 N.E.2d 846, 849 (1976) (whether entity falls within statutory term is a question of law).

■ Also relying on *Whittaker*, the Estate argues that Yamazen, as a distributor, was a seller[7] and therefore cannot be a "user or consumer." *Whittaker* did express the view that the terms "seller" and "user or consumer" are mutually exclusive. 466 N.E.2d at 482. However, the Court of Appeals has acknowledged more recently that a "seller" may become a "user or consumer." In *Wenger v. Weldy*, 605 N.E.2d 796 (Ind.Ct.App. 1993), the court held that the statute of repose began to run when the defendant, a distributor, transferred a hay baler from his business inventory and used it in his farming operation. *Whittaker* may have been correct that the "seller" *before* it was *not* also a "user or consumer," but *Wenger* demonstrates that the two terms are not mutually exclusive, at least in the sense that one who acquires for resale may by subsequent use become a "user or consumer."

■ It is uncontroverted that Yamazen sold lathes, and, as the trial court acknowledged, Yamazen is "generally a distributor." However, the trial court went on to conclude that "[i]n this instance however, they clearly became a user or consumer of this lathe." Isolated or incidental use may not be suffi-

cient to render a distributor a user, but here the undisputed facts establish repeated and extensive use of the lathe. Yamazen purchased the lathe for use as a demonstration model. The lathe was first used within weeks of delivery at a March 1981 show to manufacture several hundred parts. The lathe was then shipped to Colorado in June 1981 for another trade conference and then to Oregon for a show in September of that year. It was next sold as used equipment to Aegis. Dorsey Roth, the owner of Aegis, stated that when he checked the computer on the lathe to determine how many hours the machine had been used before he acquired it, the computer revealed that the lathe had been run in "the hundreds at least and possibly in the thousands" of hours.

■ These designated facts demonstrate that Yamazen "used" the machine to manufacture parts at trade shows. This is not a case of possession of the lathe only for resale or for assembling its component parts. *See Thiele*, 489 N.E.2d at 562 (distributor was not a "user or consumer"); *Whittaker*, 466 N.E.2d at 480 (retailers who stored and sold gun and ammunition were not "users or consumers"); *Wilson v. Studebaker–Worthington, Inc.*, 699 F.Supp. 711 (S.D.Ind. 1987) (assembler of turbine was not "user or consumer"); *but see Ferguson v. Modern Farm Sys., Inc.*, 555 N.E.2d 1379, 1386 (Ind. Ct.App.1990) (constructing grain bin with component parts was "first use"). In contrast, Yamazen used the lathe for its intended end use—the production of machined parts. If uncontroverted, these facts establish Yamazen as a "user" as this term is employed in the Act. The statute of repose is triggered by "delivery to the initial user or consumer." In *Wenger* the defendant initially purchased the product for inventory and "delivery to the user" did not occur until the defendant transferred the product to his farm. 605 N.E.2d at 798. Here, because Yamazen ordered the lathe for demonstration purposes and began using the lathe at a trade show within the month of receipt, "delivery to the initial user" took place in March of 1981.

7. "Seller" means "a person engaged in business as a manufacturer, a wholesaler, a retail dealer, a lessor or a distributor." Ind.Code § 33–1–1.5–2 (1993)

The Estate contends that genuine issues remain and points to the affidavit of its expert William Wachs. Apart from expressing an opinion on the legal issue whether Yamazen was a "user," Wachs noted that the date Aegis accepted the lathe was January 12, 1983; before delivery to Aegis, the machine had not previously been used to manufacture parts used in any manufacturing process or commerce; and Aegis received a new machine warranty. Wachs also noted that some documentation identified the lathe as a 1983 (not 1980) model.

Wachs's opinion that "the first user/consumer of 'the lathe,' was Aegis" is a legal conclusion inadmissible under Indiana Rule of Evidence 704(b). Trial Rule 56(E) requires that affidavits opposing summary judgment "set forth such facts as would be admissible in evidence...." *See Rubin v. Johnson,* 550 N.E.2d 324, 327 (Ind.Ct.App. 1990) (assertions of legal conclusions in an affidavit are insufficient under Trial Rule 56(E)).

Wachs's other assertions do not establish a genuine issue of material fact. The date that Aegis accepted the lathe is not contested and is irrelevant to whether Yamazen first "used or consumed" the lathe in 1981. It is equally irrelevant whether the lathe was used to manufacture parts used in any manufacturing process or commerce. The critical question is whether the machine was "used." Its wear and tear and useful life are the thrust of the statutory provision, not what happens to the products it makes. Whether Yamazen was willing to issue a warranty for the lathe as a new model also says nothing about the status of a prior user. Frequently used products are warranted as new for various reasons including the manufacturer's confidence in the product or willingness to accept the risk of a shorter life. Finally, the identification of the lathe on an invoice as a 1983 model does not controvert the undisputed fact that the lathe was manufactured in 1980.

■ In sum, Yamazen was the "initial user or consumer" when it used the lathe to produce parts at three trade shows in 1981. Because the accident in Kaufman's shop took place in 1992, more than ten years after delivery to Yamazen for that purpose, the Estate's action is barred by Indiana Code § 33-1-1.5-5 (1993). Accordingly, the defendants are entitled to summary judgment.

### Conclusion

The decision of the trial court is affirmed. Because the statute of repose bars the Estate's cause of action, there is no need to address the additional issues raised by the parties.

SHEPARD, C.J., and DICKSON, SULLIVAN and SELBY, JJ., concur.